BERTHA S. HEISER, Plaintiff-Appellee, *v.* DONALD E. CHASTAIN *et al.*, Defendants—(United Cab and Drivurself, Inc., Appellant.)

(No. 71-298;

Second District—July 21, 1972.

Barrick, Jackson, Switzer & Long, of Rockford, for appellant.

Smith, McGreevey & Tower, of Rockford, for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Defendant, United Cab and Drivurself, Inc., appeals from a jury verdict for plaintiff in the amount of $13,500 for injuries incurred when a cab owned by defendant, in which plaintiff was a passenger, struck the car in front of it. Defendant Donald Chastain, the driver of the cab, was dismissed upon plaintiff's motion at the close of the evidence.

The accident took place on August 21, 1969, on School Street near its intersection with Central Avenue in Rockford, Illinois. Donald Chastain testified that he was traveling about twenty miles per hour when he attempted to stop the taxi as it approached a Cadillac stopped at the intersection. He stated that he applied the brakes but they did not hold, and that he then pumped them several times. He attempted to swerve around the Cadillac, but pulled back when he saw another car coming, and the cab hit the rear bumper of the Cadillac. He said that the cab had slowed to about fifteen miles per hour at the time of impact, and

that the brakes might have caught just before the impact, but he wasn't sure. He further stated that the accident would not have occurred if the brakes had worked, and that he had experienced no difficulty with the brakes prior to this incident.

Jack Rhinehart, a Rockford police officer who was called to the scene, stated that he tested the brakes after the accident and that they went all the way to the floor without grabbing, but that when he pumped them several times there would be brakes. He found skid marks of approximately ten feet behind the rear wheels of the cab. He stated that School Street at the scene of the accident was a level road with an asphalt surface, and that it was dry at the time.

Plaintiff, who was seated in the right rear seat of the cab, suffered a fracture of the upper part of her right arm as a result of the accident. The fracture failed to heal properly after hospitalization and treatment, and an open reduction with a screw fixture was performed on March 26, 1970. The plaintiff incurred medical bills and caretaking expenses between $2,500 and $2,700.

Defendant makes no contention that the verdict was against the manifest weight of the evidence, but argues that trial errors require reversal.

The first relates to the instruction to the jury, given over objection:

"There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:

(a) Brake equipment required.

1. Every motor vehicle, other than a motor driven cycle when operated upon a highway shall be equipped with brakes adequate to control the movement of and to stop and hold such vehicle, including 2 separate means of applying the brake, each of which means shall be effective to apply the brakes to at least one wheel on a motorcycle and at least 2 wheels on all other first division and second division vehicles. If these 2 separate means of applying the brakes are connected in any way, they shall be so constructed that failure of any one part of the operating mechanism shall not leave the motor vehicle without brakes.

(b) Performance ability of brakes.

1. The service brakes upon any motor vehicle or combination of vehicles operating on a level surface shall be adequate to stop such vehicle or vehicles when traveling 20 miles per hour within a distance of 30 feet when upon dry asphalt or concrete pavement surface free from loose material.

If you decide that a party violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not

that party was negligent before and at the time of the occurrence."

■■■ Defendant contends that this instruction was improper because there was no evidence to support it and because it was inapplicable to the issues of the case. We do not agree. There was evidence that this accident was caused by a failure of the cab's brakes, and would not have happened but for such failure. The jury could properly conclude that the statute had been violated. (See *Savage v. Blancett* (1964), 47 Ill.App.2d 355, 362-364.) The instruction properly indicated that a violation of the statute did not constitute negligence *per se*, but was one fact to be considered in determining whether the defendant was negligent. (*Suvada v. White Motor Co.* (1964), 51 Ill.App.2d 318, 333, aff'd, 32 Ill.2d 612 (1965).) It was not unfair to give the instruction. Had defendant proposed a defensive instruction on the theory that any defect in the brakes was unknown to the defendant, that in the exercise of ordinary care defendant could not have discovered the defect, and that the accident was solely and proximately caused by the failure of the brakes, the court would have been obligated to also give this defensive instruction to the jury. *Savage v. Blancett, supra,* at 360, 362.

■■ Defendant next alleges that the court erred in refusing to instruct the jury that "It was the duty of the plaintiff to use available seat belts so as to avoid injury to herself." Plaintiff counters that the instruction insufficiently indicated that the use or non-use of seat belts can be considered only in relation to the extent of damages or injuries suffered, and not in relation to the issue of liability or contributory negligence. (*Mount v. McClellan* (1968), 91 Ill.App.2d 1, 5; *Hale v. Cravens* (1970), 129 Ill. App.2d 466, 477; *Schomer v. Madigan* (1970), 120 Ill.App.2d 107, 109; *Hulsebus v. Russian* (1969), 118 Ill.App.2d 174, 179-180.) However, we find a more basic defect, in that the record fails to establish by competent evidence that the damages might have been mitigated if a seat belt had been used. (See *Hale v. Cravens, supra,* at 477.) The only evidence relating to this point is a statement by Donald Chastain that the space between the front and back seats of the cab was about 30 inches; testimony of plaintiff, Bertha Heiser, that when the cab hit the car in front of it, she grabbed for something to hang onto because she felt that the cab was going to tip over, and she wanted to prevent being thrown from the seat; and a statement by Dr. Dennis Fancsali, plaintiff's examining physician, that if there was a force sufficient to cause a fracture from a blow, whether her trunk was immobilized or not would have little effect. This is insufficient to show that plaintiff's injuries would have been mitigated had she been wearing a seat belt, or to show the extent which they would have been mitigated.

Defendant's next contention is that the trial judge erred when, as the

eighty-eight year old plaintiff was having difficulty leaving the stand, he stated,

> "You better negotiate up here, Mr. Penniman. [Plaintiff's attorney.] We cannot afford to have a very big witness box and we have no insurance."

Defendant's counsel immediately moved for a mistrial, which motion was denied. Defendant argues that this reference to insurance directly inferred that while the court did not have insurance, the defendant did. Defendant contends that this error was compounded when Donald Chastain was dismissed from the case on plaintiff's motion, in that this indicated to the jury that defendant cab company was covered with liability insurance while Chastain was not. Defendant argues that further error was committed when, in his closing argument, plaintiff's attorney stated,

> "It is interesting to note that we reopened the case so that Mr. Chastain could say that he was here on behalf of the cab company. Well, you can take that for what it is worth. He is not working for the cab company; he works at Kishwaukee Dairy. I don't see any officer of the corporation here.  *  *  *  I don't see the manager here, but be that as it may, it isn't a great point."

Defendant says that these comments regarding the absence of an official from the cab company, after the trial judge's comment and the voluntary dismissal of Chastain, were an effort to further inject the presence of insurance into the case by implying that defendant had no interest in the outcome since its insurer would have to pay any judgment against it.

■■ The general rule in personal injury cases is that evidence informing the jury that the defendant is insured against liability is inadmissible. (*Guardado v. Navarro* (1964), 47 Ill.App.2d 92, 101.) But this does not mean that any mention of insurance by anyone automatically constitutes ground for mistrial. Inadvertent references to insurance by persons other than plaintiff's counsel have been held not to be prejudicial error. (*Rench v. Bevard* (1961), 29 Ill.App.2d 174, 182-184; *Leming v. Oltman* (1967), 87 Ill.App.2d 97, 103-104; *Sphatt v. Tulley* (1962), 38 Ill.App.2d 229, 240-241.) The remark made by the trial judge was inadvertent, and was not meant to inject the subject of insurance into the case. The plaintiff had nothing to do with the statement. It is true that the trial judge is the dominant figure in a courtroom, and should be most careful not to make any statement which could prejudice the jury. (*Hickey v. Chicago Transit Authority* (1964), 52 Ill.App.2d 132, 137.) But the remark was not prompted by any interest in the case, and referred to the court's lack of insurance rather than the defendant's possession of it. It was not prejudicial error.

The dismissal of Donald Chastain was not an indication that the defendant cab company was covered by liability insurance, and adds nothing to defendant's argument.

■■ Nor do the references in plaintiff's closing argument to the absence of any representative of the cab company constitute reversible error. The references are not justifiable as fair comment on Donald Chastain's testimony that he was appearing on behalf of the cab company as well as on his own behalf. Fair comment would seem to extend only so far as to whether Chastain was actually appearing for both defendants, and would not encompass comments as to the absence of officials of the company. But we do not agree with defendant that *Reed v. Johnson* (1965), 55 Ill.App.2d 67, 76, and *Ferrer v. Vecchione* (1968), 98 Ill.App.2d 467, 473-474, are determinative. In *Reed*, we held that a statement that defendant had no personal concern about the amount of the verdict constituted a deliberate implication of the existence of insurance, and reversible error. This holding was followed in *Ferrer*, where counsel said of the defendant,

"He is not with us. He is not present here today. He didn't favor us with his appearance yesterday either. * * * What interest he has in this case, its outcome; what he cares about it. * * * He wasn't here * * *."

In the case before us, the implication that because there is no corporate representation in court the defendant is not concerned over the outcome, with the further implication that it is unconcerned because insured is more tenuous. The remark is not a basis for reversal under the circumstances.

■■■ Defendant's final contention is that the court erred by giving an incorrect oral instruction regarding the burden of proof to the jury during the *voir dire* examination. Defendant's counsel, in questioning a prospective juror, stated:

"On the basis of the law, as the Court gives it to you, the plaintiff has the burden of proving their case and the defendant has no burden whatsoever. They are brought into court to defend the case. You understand that?"

The court interrupted, saying,

"Excuse me, but I don't think that is a proper statement. You say that the defendant has no burden whatsoever. I don't think you should go into that. We are talking about initial burden to make out a *prima facie* case on the part of the plaintiff. However, if that burden is sustained, that burden is switched."

■■ The trial judge was incorrect in stating that the burden of proof "switched". Although the concept is an elusive one, it is now well

established that the burden of proof never shifts. (*Caley v. Manicke* (1961), 29 Ill.App.2d 323, 327-330, (reversed on other grounds in 24 Ill.2d 390 (1962) ); *Henderick v. Uptown Safe Deposit Co.* (1959), 21 Ill.App. 2d 515, 525-526.) The judge was undoubtedly referring to the burden of producing evidence, which shifts to the defendant when the plaintiff has established a *prima facie* case. However, the response by the court to what he considered counsel's misleading reference to the burden of proof was not prejudicial error, since the court properly instructed the jury as to that burden at the end of the case.

The judgment below is affirmed.

Judgment affirmed.

ABRAHAMSON and T. MORAN, JJ., concur.