DONALD A. BAIKIE, Plaintiff-Appellee, *v.* LUTHER HIGH SCHOOL SOUTH *et al.*, Defendants-Appellants.

First District (1st Division)    No. 76-693

Opinion filed July 25, 1977.

Yates, Goff, Gustafson & Been, P. C., of Chicago (Delbert T. Been, of counsel), for appellants.

Philip H. Corboy and Associates, of Chicago (Philip H. Corboy and Thomas A. Demetrio, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Donald A. Baikie (plaintiff) brought action against Luther High School South and Norman Meier, a teacher (defendants) claiming damages for personal injuries resulting from an alleged wilful and wanton assault and battery. A jury returned a verdict in favor of plaintiff and against both defendants in the amount of $25,000. A special interrogatory as to whether the defendant Norman Meier, the teacher, was guilty of wilful and wanton conduct was answered affirmatively. Defendants appeal.

In this court defendants contend that plaintiff's attorney made improper and prejudicial closing arguments; an expert medical opinion invaded the province of the jury; instructions of the court regarding existence of an agency and also the issues in the case were improper; and that the special verdict was contrary to the weight of the evidence.

We will consider these matters in the inverse order. Plaintiff was in his junior year at Luther High School South which is a private high school in Chicago. Norman Meier had been associated with the school for some 25 years as a teacher of mathematics and as a track and field coach. He was a homeroom teacher and also taught five classes per day comprising a total of approximately 150 students. The incident occurred on April 7, 1971, about 8 a.m., on the second floor of the school premises. A group of students had gathered near the lockers speaking to another teacher named Dennis Haegele. This teacher spoke with the group and there was some

conversation and laughter. Plaintiff, as a member of the group, joined in the laughter. It does not appear that any of the group were making loud noises or that there was an unusual commotion. Plaintiff joined in these activities, not to a greater extent than any of the remaining students.

Four other students, who were members of this group when the incident occurred, were generally in agreement regarding their testimony. One student testified that her books had fallen from a locker and that Mr. Haegele spoke to the boys in a teasing manner about not helping her. Haegele then left the group. Defendant Meier approached the group and, without saying anything, seized plaintiff by the collar and pushed and slammed him against the lockers. At that time plaintiff was doing nothing. Although the group had said nothing disrespectful, defendant stated that plaintiff was disrespectful to a teacher and had laughed behind his back. Two other young men agreed generally with the testimony that nothing unusual had occurred until defendant Meier walked up to plaintiff, seized him by his shirt collar and forcibly pushed him several times against the lockers.

Plaintiff testified that the students were talking in a group and that Mr. Haegele said something about books on the floor and then left the group. Plaintiff testified that defendant "started hollering" and pushed him into a locker. Defendant accused plaintiff of laughing at a teacher but this was not true.

Defendant Meier testified in his own behalf that Mr. Haegele was trying to straighten out a problem and that the students were laughing at his efforts. Meier stated that he approached the group as Haegele left and asked plaintiff why he was laughing. Plaintiff responded that he did not laugh and moved away. Defendant testified that he then seized plaintiff by the shirtfront but stated that he did not slam or shove plaintiff into a locker. Defendant testified that he did recall plaintiff striking a locker but that this was possible but not as a result of a push by defendant. Defendant had never before met plaintiff but "assumed" that plaintiff was a student. The situation may have been that plaintiff fell against the lockers but defendant did not recall him coming into contact with the lockers. Defendant did grab plaintiff by the front of his shirt when the latter was walking toward his homeroom.

■■  The issue here was whether defendant was guilty of a wilful and wanton assault upon plaintiff. This requirement has its origin in two identical portions of the School Code providing generally that teachers stand in the relationship of parents and guardians to the pupils. (See Ill. Rev. Stat. 1975, ch. 122, pars. 24—24, 34—84a.) Our supreme court has recently pointed out that these enactments actually confer upon teachers "the status of parent or guardian to the students." (*Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 170, 347 N.E.2d 705.) It follows,

therefore, that in the case before us in order to impose liability upon the defendants, plaintiff must prove wilful and wanton misconduct by defendant Meier. See also *Gordon v. Oak Park School District No. 97* (1974), 24 Ill. App. 3d 131, 134, 320 N.E.2d 389.

■■ Carrying the matter one step forward, wilful and wanton conduct requires an intentional act or an act " '* * * committed under circumstances exhibiting a reckless disregard for the safety of others * * *.' " *Klatt v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 481, 488, 211 N.E.2d 720, quoting from *Schneiderman v. Interstate Transit Lines, Inc.* (1946), 394 Ill. 569, 583, 69 N.E.2d 293.

Applying these principles to the case before us, the evidence of the students is clear and definite to the effect that defendant, without reason or proper investigation, seized plaintiff forcibly and thrust him strongly against the steel lockers. This evidence is sufficient to support the general verdict of the jury against defendants and the special verdict finding defendant Norman Meier guilty of wilful and wanton conduct. In defendant's own testimony, he conceded that he had seized plaintiff by the shirt. He admitted that he did not know plaintiff and "assumed" that plaintiff was a student. As against the definite testimony of the four students, defendant answered only that he did not recall plaintiff striking the locker although it is possible that he did. In view of the factual strength of plaintiff's case, we conclude necessarily that the verdict and the answer to the special interrogatory are strongly supported by the evidence and that we may not substitute a different result from that reached by the jury. See *Pennington v. McLean* (1959), 16 Ill. 2d 577, 585-86, 158 N.E.2d 624.

We will next consider the contentions of defendants directed at the instructions. Over objection by defendants, the court gave the jury an instruction based upon Illinois Pattern Jury Instructions, Civil, No. 50.01 (2d ed. 1971) (hereinafter cited as IPI Civil). This instruction told the jury that the defendant school was sued as principal and the teacher as agent. If the jury found the teacher liable, it must also find the school liable. However, if the jury found the teacher not liable, then the school also should be found not liable. Defendants urge that the school denied agency and therefore the trial court should have given IPI Civil No. 50.03. This instruction directs the jury to determine whether an agency existed and whether the agent was acting within the scope of his authority at the time.

■■ The comments to these instructions differentiate between the two types of instructions and they do, as defendants contend, approve IPI Civil No. 50.03 where the existence of the agency has been denied so that its existence constitutes an issue for the jury. In the record before us, plaintiff alleged that the teacher was acting as an agent of the school in

connection with plaintiff's injuries. In their answer, defendants admitted that the teacher was employed in that capacity by the school at the pertinent time and place. In his testimony, the teacher stated that he was engaged as a teacher at the school and had been associated in that capacity for some 24 or 25 years. Thus, his status as agent is admitted in the pleadings and proved in his own testimony. The instruction as given was therefore proper.

■■ The court gave the jury an instruction upon the issues made by the pleadings. (Compare IPI Civil No. 20.01.01.) This instruction stated that plaintiff claimed he was injured by the wilful and wanton conduct of defendant Meier in pushing and shoving him into the lockers. Defendants object that this instruction fails to include the element that plaintiff was free from contributory wilful and wanton conduct. Defendants have overlooked the fact that at the close of all the evidence, the court granted plaintiff's motion for a directed verdict on the issue of plaintiff's freedom from wilful and wanton misconduct. This ruling by the trial court was, in our opinion, correct as a matter of law. There is no evidence in the record that plaintiff engaged in any wilful and wanton misconduct so as to precipitate the acts of the teacher regarding which plaintiff now complains. Accordingly the instruction eliminating this element from the issues made by the pleadings was in proper form. In addition, we note that no objection was raised by defendants to this instruction at the conference on instructions. Accordingly the issue has been waived. *Delany v. Badame* (1971), 49 Ill. 2d 168, 178, 274 N.E.2d 353, cited in *Migliore v. County of Winnebago* (1974), 24 Ill. App. 3d 799, 804, 321 N.E.2d 476.

■■ The same instruction appears on its face to contain an error in that it states that defendants deny "that any claimed act on the part of the defendants was a proximate result of the claimed injuries." It is patently clear that the word "result" is erroneous and that the word "cause" should have been used. Defendants now claim that this is reversible error. Here also, no objection was made by defendants to this effect at the conference on instructions. If the error had been noticed prior to that time by counsel for defendants, he owed a duty to the court to direct the attention of the court to the error. In addition, the error appears in the typewritten instructions but the record does not show if the trial court corrected it in reading the instructions to the jury. In any event, we find that the court also gave IPI Civil No. 21.02, being burden of proof on the issues. It appears that this instruction advised the jury that plaintiff had the burden of proving that "the wilful and wanton conduct of the defendants was a proximate cause of the injury to the plaintiff." This clarified the situation and, considering all of the instructions as a whole and as one coherent

series, we cannot say that the patent mistake constituted reversible error. See *People v. Stock* (1974), 56 Ill. 2d 461, 476, 309 N.E.2d 19.

■■ Counsel for plaintiff on direct examination obtained testimony from an admittedly qualified medical expert that plaintiff had suffered "about 20 percent disability in the right shoulder." Counsel for defendants objected upon the theory that the testimony invaded the province of the jury and moved the court to instruct the jury to disregard the answer. After a conference in chambers, the court told the jury that the objection had been sustained to the question on the ground that it was speculation and the jury was instructed to disregard it. We reject defendants' claim that in some manner this ruling constituted reversible error. On the contrary, the court granted counsel for defendants all of the relief that he requested. Furthermore, we doubt the validity of the objection stated to be upon the ground that the response invaded the province of the jury. It is presently the law of Illinois that, since the trier of fact is not required to accept the opinion of the expert, opinion testimony regarding the ultimate issue in the case does not usurp the province of the jury. *Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, 122, 273 N.E.2d 809; *Spence v. Commonwealth Edison Co.* (1975), 34 Ill. App. 3d 1059, 1070, 340 N.E.2d 550.

The final contention of defendants is directed to final argument of plaintiff's counsel. Defendants' theory here is that plaintiff's counsel improperly, although indirectly, informed the jury of the existence of insurance coverage. Defendants depend upon a statement by plaintiff's attorney that he did not mean to convey that defendant Meier's 25 years of teaching "is going to go down the drain by this lawsuit. Contrary there are no repercussions as a result of this." Counsel for defendants objected to this argument and the court stated that the argument was limited to the evidence in the case. On another occasion, counsel for plaintiff told the jury that plaintiff did not submit any doctor's bills "because they were paid by other sources * * *." When counsel for defendants objected, the court again stated that the argument was limited to the testimony that the jury has heard.

Plaintiff responds by urging that the statements were proper in view of arguments previously made by counsel for defendants. Plaintiff points out that counsel for defendants commented at some length upon the failure of plaintiff to produce other witnesses who were equally available to both sides to testify as to his injuries, such as plaintiff's mother and his then present fellow employees. Counsel for defendants also commented upon the failure of plaintiff to produce his doctor bills and the failure of plaintiff to produce another physician who had attended him. Plaintiff urges that counsel for defendants attempted to impress the jury with the

possibility that a verdict against the teacher would place his career in jeopardy. Defendants' counsel did stress the length of service that the teacher had and the activities that he indulged in such as being a gymnasium and track coach. As counsel for plaintiff pointed out to the jury, the teacher sat in the courtroom wearing his Luther High School blazer.

■■ Upon careful consideration of all of the arguments made to the jury, we are impelled to reject defendants' contentions in this regard. There is some validity to the claim of plaintiff regarding attempted retaliation for remarks previously made by counsel for defendants. In such cases a wider latitude of permissible remarks is acceptable. (See *Goldstein v. Hertz Corp.* (1973), 16 Ill. App. 3d 89, 94, 305 N.E.2d 617, citing *Perfect v. Kaley* (1970), 130 Ill. App. 2d 61, 264 N.E.2d 430.) We cannot classify either the remarks originally made in behalf of defendants or the retaliatory statements made in behalf of plaintiff as being so inflammatory or prejudicial as to require reversal of the judgment in view of the evidence in the record before us.

■■ As regards the remaining arguments assailed by counsel for defendants, it is the general rule in injury cases that evidence informing the jury that the defendant is insured against liability is inadmissible. (*Heiser v. Chastain* (1972), 6 Ill. App. 3d 552, 557, 285 N.E.2d 601.) However, as stated in *Heiser*, this does not necessarily mean that each and every mention of insurance during a trial requires reversal. In the case before us, the statement that the bills were paid by other sources is most general in nature and does not necessarily refer to insurance. Plaintiff's attorney conceded to the jury that since the medical bills were not in evidence they were of no importance. The instruction to the jury on damages did not include medical expenses as one of the possible elements of plaintiff's damages. Also the general statement "other sources" may have had reference to a great variety of situations other than the presence of insurance. Also, if the statement actually referred to insurance, it would have reference to plaintiff's own medical insurance and therefore would not have had any bearing upon the liability of defendants. In *Heiser*, a remark by the trial court actually using the word "insurance" with reference to the condition of the witness box was held not prejudicial because it "referred to the court's lack of insurance rather than the defendant's possession of it." (6 Ill. App. 3d 552, 557.) In our opinion, the statement of plaintiff's counsel that "there are no repercussions" as a result of the litigation may similarly be classified as being of a general nature.

It must also be remembered that the trial judge has observed the entire proceeding from start to finish and consequently has a far better opportunity than this court to determine the effect of final argument upon the jury as regards the presence or absence of an unfairly prejudicial

situation. Consequently, it has been repeatedly stated by reviewing courts that the character and scope of final argument is entrusted largely to the good judgment of the trial court and all reasonable presumptions must be indulged in that the trial court has properly performed his duty in this regard in connection with exercise of his discretion. (See *Mrzlak v. Ettinger* (1975), 25 Ill. App. 3d 706, 716, 323 N.E.2d 796, and the authorities there cited.) We are unable to conclude that the effect of the final argument in the case before us was so prejudicial as to require a reversal of the judgment appealed from.

We find no prejudicial error in the record and the judgment is accordingly affirmed.

Judgment affirmed.

McGLOON and O'CONNOR, JJ., concur.